United States District Court
Southern District of Texas
FILED

AUG 1 6 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FIRE SHIPPING, LTD. | § | |
|        Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. **B - 0 4 - 1 3 8** |
| | § | Admiralty |
| GST SHIPPING LINE, LTD., | § | |
| a/k/a GST SHIPPING LINE | § | |
|        Defendant. | § | |

### VERIFIED ORIGINAL COMPLAINT

TO THE JUDGE OF THIS COURT:

COMES NOW Fire Shipping, Ltd., Plaintiff, and asserts its Verified Original Complaint against the Defendant, GST Shipping Line, Ltd a/k/a GST Shipping Line (hereinafter sometimes referred to as "GST"), as follows:

### JURISDICTION

1.    This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to Article III, Section 2 of the United States Constitution, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure for Certain Admiralty and Maritime Claims.

### PARTIES

2.    Plaintiff is a limited liability company organized and existing under laws of Malta, with its principle place of business in Greece.

3.    Defendant GST, is a limited liability company registered and existing under

51982:1117157.1:081304

the laws of Hong Kong, but whose main operational base is Antwerp, Belgium. GST is engaged in the international maritime shipping trade as a charterer of vessels. At the time of filing this complaint, GST time-chartered the M/V GLYFADA, to deliver a cargo of steel from Novorossiysk, Russia to Brownsville, Texas. Accordingly, although GST maintains no office in Texas, it conducts business in Texas.

## FACTS

4.      By a time charter dated 13 September 2002 ("the Charterparty"), Plaintiff time chartered its vessel, ATHENS OF THE NORTH, to Defendant, for "One time charter trip...in/out geographical rotation Baltic and/or continent to West Africa with intended cargo of steel..." Attached as Exhibit "A" is a true and correct copy of the Charterparty.

5.      Pursuant to the Charterparty, the vessel loaded a cargo of steel billets at St. Petersburg, Russia, bound for discharge at two ports--Dakar, West Africa and Lagos, Nigeria.

6.      While at Lagos, the stevedores appointed by Defendant, seriously damaged the vessel's derrick (crane) No. 4, due to the mishandling and general negligence of the winch man. Specifically, instead of using the cargo gears properly, the stevedore operated the winch from still to maximum speed, making sudden stops at high speed while slewing (or rotating) and hoisting the cargo at the

same time. While hoisting and slewing at the same time with a bundle of approximately 13.5 Metric Tons (MT) steel billets, the stevedore made a sudden stop, causing the derrick to sway about and drop down across the starboard railing of the vessel.

7.    The stevedore operating the derrick smelled of alcohol and upon information and belief, was intoxicated. The winchman fled the scene after the occurrence. Later in the day of 20 October 2002, the dagger knee at hold No. 1 became detached and bent after it was struck by a sling of cargo during discharge.

## CAUSE OF ACTION

8.    Pursuant to the terms of the Charterparty, the Captain (although appointed by Plaintiff) "shall be under the orders and direction of (the Defendant)...and (Defendant) are to load, stow...discharge...the cargo at their expense under the supervision of the Captain..." Ex. A., at ¶8. Pursuant to paragraph 60 of the Charterparty, "...All risk, expenses, loss of time caused by negligent handling, including eventual damage, to be for (Defendant's) account..." *Id.*, at ¶60. As Plaintiff, through its captain, issued immediate, written notice to Defendant of the damages (Exhibit "B", Master's letter of protest), Defendant is contractually responsible for damages to the derrick, and all reasonably foreseeable expenses and losses incurred thereby.

## DAMAGES

9.    Plaintiff has sustained damages in an amount of not less than $434,073.00 consisting of costs of repair to the derrick, labor and survey fees, charter hire due or alternatively, loss of hire, bunkers at Lagos, agency fees and expenses at Lagos, and Plaintiff's liability to a third party, Baltic Transport, Inc., which liability was caused by the delay resulting from the repairs at Lagos.  It has also been necessary for Plaintiff to retain the services of attorneys to enforce its claims, and Plaintiff seeks recovery of its reasonable and necessary attorney's fees.

## CONDITIONS PRECEDENT

10.    The above facts demonstrate Defendant is duly indebted to Plaintiff, but despite amicable demand, has not been paid, and Defendant has ignored requests to voluntarily post security for Plaintiff's claims.

## ARBITRATION PROCEEDINGS

11.    As a result of Defendant's actions, Plaintiff commenced arbitration proceedings in London and submitted its claim, although Defendant has not yet responded.  This action is in aid of the arbitration, and seeks security for Plaintiff's claims.

## RULE B ATTACHMENT REQUEST

12.    As Defendant cannot be found within this District, Plaintiff seeks *in personam*

jurisdiction over Defendant for this cause of action by attachment of cash, goods, and chattels of GST onboard the M/V GLYFADA and within the District pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, by Writ of Attachment.

13.    All and singular the above premises are true and correct and within the admiralty and maritime jurisdiction of this court.

**WHEREFORE**, Plaintiff prays:

14.    That because *in personam* Defendant GST, cannot be found within the District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, that *ex parte* consideration and/or hearing be held and that a Rule B Writ of Attachment pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure be issued, attaching all assets and property of the Defendant which can be found within this District, including but not limited to any and all fuel/oil bunkers, or other assets of the Defendant on board the M/V GLYFADA, in amount sufficient to satisfy Plaintiff's claims, together with interest, costs, and attorney's fees;

15.    That a summons issue to the *in personam* Defendant, citing it to appear and answer the matters stated in this Verified Original Complaint;

16. That the Court enter judgment for Plaintiff and against Defendant, *in personam*, in the amount of at least $434,073.00 or such other amount as may be proved, together with interest, costs, and attorney's fees;

17. That the fuel/oil bunkers, and chattels owned by Defendant aboard the vessel be sold to satisfy said judgment; and

18. That the Court grant all other and further relief to which Plaintiff is entitled.

Respectfully submitted,

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

By:_____

James H. Hunter, Jr.
Federal ID # 15703
Texas State Bar # 00784311
Sara Barrientes
Federal ID # 37134
Texas State Bar # 24040478
**Attorneys for Plaintiff**
**FIRE SHIPPING, LTD.**

Of COUNSEL:

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**
55 Cove Circle
P. O. Box 3509
Brownsville, TX 78523-3509
Tel:    (956) 542-4377
Fax:    (956) 542-4370

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FIRE SHIPPING, LTD. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | Admiralty |
| GST SHIPPING LINE, LTD., | § | |
| a/k/a GST SHIPPING LINE | § | |
| Defendant. | § | |

### AFFIDAVIT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

James H. Hunter, Jr., being first duly sworn, deposes and says as follows:

1.     I am the attorney for Plaintiff, Fire Shipping, Ltd. and make this affidavit under Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.     To the best of my personal knowledge, information, and belief, Defendant, GST Shipping Line, Ltd. a/k/a GST Shipping Line cannot be found within this District for the purpose of service with the summons and complaint as provided by Fed. R. Civ. P. 4(e)(1) or (2), (g), (h)(1), or (j)(1) or (2). *See* Local Rule 4(b)(1).

3.     I have made a diligent search to confirm that the Defendant cannot be served,

by reviewing local directories within this District, by conducting a web search, and by contacting the Secretary of State for the State of Texas in inquiry for registered agent.

4.     Furthermore, the information contained within this affidavit supports the attachment of any and all fuel/oil bunkers owned by Defendant aboard the M/V GLYFADA, pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Further affiant sayeth naught.



_____
James H. Hunter, Jr., Affiant

SUBSCRIBED AND SWORN TO before me this ___*16th*___ day of August, 2004.

SYLVIA SALAS
MY COMMISSION EXPIRES
January 24, 2005

_____
Sylvia Salas
My commission expires: _*1/24/05*_

30/09 '02 MON 13:12 FAX                    THENAMARIS

Inc. 513198   26-Sep-02 14:40   From:02086809080   P=?   Subj: " [Receiving Page 3]
28/09 '02 14:34   ☎02086809080          SHEARWATER                      ☑002/

ATT CEDRIC CHATTELEYN

"ATHENS OF THE NORTH" AT LAGOS 20.10.02
DAMAGE TO DERRICK No 4

# WORKING COI

# Time Charter

## GOVERNMENT FORM
### *Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party**, made and concluded in         London         13th   day of September     19
2  Between   *Fira Shipping Ltd.*
3  Owners of the good   *Maltese*          Steamship/Motorship    "*ATHENS OF THE NORTH*"    of
4  of                          tons gross register, and                tons net register, having engines of                indicated hors
5  and with hull, machinery and equipment in a thoroughly efficient state and classed
6  at                          of about                          cubic feet bale capacity, and about                tons of 2240 lbs
7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding two and one half percent of ship's deadweight a
8  allowing a minimum of fifty tons) on a draft of                feet                inches on                Summer freeboard, inclusive of permanent b
9  which are of the capacity of about                feet                          tons of fuel, and capable of steaming fully laden under good w
10  conditions about                knots on a consumption of about                tons of best Welsh coal - best grade oil - best grade Di
11  now . See Clause No.52
12                          and   *GST Shipping Line*         Charters of the City of   Hong Kong

13  **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of deliv
14  about *One timecharter trip via safe port(s), safe berth(s), safe anchorage(s), always afloat, always within Institute War*
15  *Limits, in/out geographical rotation  Baltic and/or Continent to West Africa with intended cargo of steel/steel products,*
16  *lifts, lawful merchandise.* within below mentioned trading limits.
17  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining respon
18  the fulfillment of this Charter Party.
   *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*
18  Vessel to be placed at the disposal of the Charterers, at  on passing Skaw eastbound any time day or night Sundays and
19  *Holidays included.  Charterers to pay for pilotage from Greens to Spodsbjerg and vice versa when passing the Belt, respec*
   *from Helsingor to Drogden if passing the Sound.*
20  in such dock, or at such wharf or place (where she may safely lie always afloat at all times of tide, except as otherwise provided in clause No.
21  the Charterers may direct. If such dock, wharf or place be not available, time to count as provided for Vessel on her delivery to be
22  ready to receive cargo with clean-swept holds *See Clause 36* and tight, staunch, strong and in every way fitted for the service, having water ballast, winches
23  and donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the
24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful me
25  dise, including petroleum or its products, in proper containers, excluding     *see clause 5A*
26  (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their
27  all necessary fittings and other requirements to be for account of Charterers). In such lawful trades, between safe port and/or ports in British
28  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico,
29  Mexico, and/or South America,                                                                    and/or E
30  and/or Africa and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence- b
31  October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding  when out of season  White Sea, Black Sea  and the I
32  *Lawful cargoes only to be shipped.*
33
34
35  as the Charterers or their Agents shall direct, on the following conditions;
36    1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; shall pay fo
37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler *lubricating oil* and maintain her clean and
   keep
38  the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.
39    2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Chgs *compulsory and customary,*
   Pilotages, Agencies, Commissions,
40  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts
41  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered becaus
42  illness of the crew to be for Owners account. Fumigation ordered because of cargoes carried or ports visited while vessel is employed unde
43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous p
44  of six months or more.
45  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual expen
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting b
47  for dunnage, they making good any damage thereto.
48    3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remainin
49  board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than               tons and not more
50               tons and to be re-delivered with not less than               tons and not more than               tons  See claus
51    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate U.S.$ 6,275 ( six thousand two hundred and seventy fi
52  *five dollars) daily  including overtime*                          United States Currency, ton on vessel's total deadweight carrying

EXHIBIT

"A"

30/09 '02 MON 13:12 FAX                    THENAMARIS

Inc.513198   26-Sep-02 14:40   From:02086809080   P=?  Subj: " [Receiving Page 4]
26/09 '02  14:36   ☎02086809080          SHEARWATER                    ☎003/0

| | |
|---|---|
| 53 | capacity, including bunkers and ~~stores, on~~ ............................ per Calendar Month, commencing on and from the day of her delivery, as aforesaid, |
| 54 | and after the same rate for any part ~~day~~ month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary |
| 55 | wear and tear excepted, to the Owners (unless lost *on dropping outward pilot last Sea Pilot port in Charterers option Tuma - Dou* |
| 56 | *range including Nigeria anytime day or night Sundays and Holidays Included* .................................................. |
| 57 | .............................. unless otherwise mutually agreed. ~~Charterers are to give Owners not less than~~ ~~notice of vessels expected date of re-delivery and probable port.~~ *See clause 29* |
| 58 | 3. Payment of said hire to be made New-York *Owners nominated Bank ( See clause 53)in cash in United States Currency~~anti-monthly~~* *every 15 days* in advance, and for the last half-month *15 days* or |
| 59 | part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it become |
| 60 | due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment o |
| 61 | hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service *See Clause 98 of* the Char- |
| 62 | terers, without prejudice to any claim they (the Owners) may otherwise have on ~~Time to count from 7 a.m. on the working day~~ |
| 63 | ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers~~ ~~to have the privilege of using vessel at once, such time used to count as hire~~   *See lines 18/19* |
| 64 | |
| 65 | Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, |
| 66 | to 2 1/2% commission, and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the applic |
| 67 | of such advances. |
| 68 | 6. That the cargo or cargoes be laden and/or discharged ~~in any dock or at~~ any ~~safe wharf~~ *wharf* place that Charterers or their Agents may |
| 69 | direct, provided the vessel can safely lie always afloat at any time ~~except at such places where it is customary for similar size vessels to safely~~ |
| 70 | ~~lie aground.~~ |
| 71 | 7. That the whole reach of the Vessel's Hold, Deck *including weather deck and hatchcover* and usual places of loading (not more than she ca reasonably stow and carry), also |
| 72 | accommodations for Supercargo, ~~if carried~~ *in por*, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew |
| 73 | tackle, apparel, furniture, provisions, stores ~~Charterers have the privilege of passengers as far as accommodation allow, Charterers~~ |
| 74 | ~~paying Owners~~ .............................. per day per passenger for accommodation and meals. However, it is agreed that in case any fines or extra expense |
| 75 | ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ |
| 76 | 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew |
| 77 | boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment |
| 78 | agency and Charterers are to load, *stow,* ~~stowage~~, and trim *discharge, tally, lash, unlash, secure* the cargo at their expense under the supervision |
| 79 | the Captain, ~~who is to sign Bills of Lading for~~ cargo as presented, in conformity with Mate's or Tally Clerk's receipts.   *See Clause No.42* |
| 80 | 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shal |
| 81 | receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments. |
| 82 | 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prose |
| 83 | with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying a |
| 84 | rate of $7.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual T |
| 85 | Clarks, Stevedore's Foreman, etc., Charterers paying at the current U.S. $5.00 rate per meal, for all such victualling. |
| 86 | 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, an |
| 87 | Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the |
| 88 | terers, their Agents or Supercargo, when required, with a true copy of daily Logs  *in English language*, showing the course of the vessel and |
| 89 | distance run and the sea *consumption of fuel* |
| 90 | ~~consumption of fuel.~~ |
| 91 | 12. That the Captain shall use diligence in caring for the ventilation of the cargo. |
| 92 | ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~ ................................................................... |
| 93 | ~~on giving written notice thereof to the Owners or their Agents~~ ..................... ~~days previous to the expiration of the first named term, or any declared o~~ |
| 94 | 14. That if required by Charterers, time not to commence before *17th September 2002* ............................... and should |
| 95 | not have given written notice of readiness *been delivered* on or before  *21st September 2002* .............. but not later than 4 p.m. Charter |
| 96 | their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. |
| 97 | 15. That in the event of the loss of time from ~~deficiency~~ *and/or default of men or deficiency of* stores, fire, breakdown or damage to hull, machinery or equipment, |
| 98 | grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other c preventing the full working  *sailing or passage* of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed |
| 99 | reduced by |
| 100 | defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequ |
| 101 | thereof, and all extra expenses shall be deducted from the hire. |
| 102 | 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shal |
| 103 | returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the |
| 104 | Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted. |
| 105 | The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for |
| 106 | purpose of saving life and property. |
| 107 | 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New-York, |
| | *London according to English Law* |
| 108 | one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, an |
| 109 | the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators ~~shall be commercial~~ *shipping men and Members of* L.M.A.A. Provided that where the amount in dispute does not exceed the sum *if USD 50,000 (or such other sum as the par* |
| | *may agree) any dispute shall be resolved in accordance with small claims procedure of the London Maritime Arbitrators* |

30/09 '02 MON 13:13 FAX                    THENAMARIS

Inc.513198   26-Sep-02 14:40   From:02086809080   P=?   Subi: " [Receiving Page 6]
26/09 '02  14:37  ☎02086809080           SHEARWATER                    @004

*Association*

110   18. That the Owners shall have a lien upon all cargoes, and all sub-freit, *demurrages, sub-hires,* for any amounts due under this Charter, includ General Aver-
111   age contribution, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or
112   deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents,
113   might have priority over the title and interest of the owners in the vessel.

114   19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expens
115   Crew's proportion. General Average shall be adjusted, stated and settled *London* according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule P
116   York-Antwerp Rules 1924, *1974, and latest amendments* at such part or places in the United States as may be selected by the carrier, and as to settle provided for by these
117   Rules, according to the laws and usages at the part of New York. In such adjustment disbursements in foreign currencies shall be ex change
118   United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be conver
119   the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreed
120   bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the
121   or his agents may deem sufficient or additional security for the contribution of the goods and for any salvage and special charges thereof sha
122   required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option
123   carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account
124   place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be p
125   United States money.
126   In the event of accident, danger, damage or disaster, before or after commencement of the voyage, resulting from any cause whatso
127   whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwi
128   goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sac
129   losses, or expenses of a general-average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect
130   goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving sh
131   ship belonged to strangers. *Hire not to contribute to General Average*

132   Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
133   20. Fuel used by the vessel while either for sinking, remaining water, or for grate, are to be agreed to as to quantity, and the
134   cost of replacing same, to be allowed by Owners.
135   21. That at the vessel may be from time to time employed in trophial waters during the term of this Charter, Vessel is to be docked
136   convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reducing
137   time of hire painting, and payment of the hire to be suspended until she is again in proper state for the service.
138   *No drydocking except in case of emergency.*
139

140   22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling up to three tons *as per Clause 52* also
141   providing ropes, falls, slings and block *as on board.* If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear
142   ments, also wire equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil
        *electric light* for
143   night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense
144   Charterers to have the use of any gear on board the vessel. *Vessel not to provide winchmen*

145   23. Vessel to work night and day, if required by Charterers, and to be at Charterers' disposal during loading and discharging;
146   manner to provide one winchman per hatch to work night and day, as required, Charterers agreeing to pay officers, engineers, win
147   deck-hands and sailors, crew for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rate
148   port, or labor unions, prevent crew from driving winches, there Winchmen to be paid by the Owners in the event of a disabled winch or winches, or
149   insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and *actual* loss of time occasioned
150   thereby.
151   24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability con
152   in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Ve
153   etc." in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses
154   of which are to be included in all bills of lading issued hereunder.

155                                                U.S.A. Clause Paramount
156   This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved
157   16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carr
158   any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of
159   be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160                                              Both-to-Blame Collision Clause
161   If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default
162   Master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods c
163   hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such
164   or liability represents loss of or damage to, or any claim whatsoever of the owner of said goods, paid or payable by the other or
165   carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or
166   owners or part of their claim against the carrying ship or carrier.
167   25. That ship shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be
168   drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely ent
169   port or to get out after having completed loading or discharging. *See clause 37*
170   26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible ft
171   navigation of the vessel, *acts of pilots and tugboats,* insurance, crew, and all other matters, same as when trading for their own account.
172   27. A commission of 2-1/2 *1.25* per cent is payable by the Vessel and Owner *Shearwater Shipping and Chartering Limited,Croydon*
173
174   on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.  *Plus 1.25% to SEATRADER MARITIME INC.*
175   28. An address commission of 2-1/2 *3.75* per cent payable to *Charterers*................... on the hire earned and paid under this Charter.

30/09 '02 MON 13:13 FAX                    THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=?  Sub1: - [Receiving Page 6]
      26/09 '02  14:39    ☎02088809083      SHEARWATER                      Ø005/(

*Clauses 29 to 61 inclusive, as attached, are deemed to be fully incorporated in this Charter Party.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

30/09 '02 MON 13:14 FAX            THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=?  Subj: " {Receiving Page 7]
26/09 '02  14:39  ☎02086809080        SHEARWATER                    @006/01

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

29. Owners/Master to give notice on fixing and then daily notices to =GST BREMEN= and load port agents. Charterers are to give 15/10/5 days approximate and 48/24 hours definite notice of port and date of redelivery.

30. Should the vessel be off hire for more than 16 consecutive days, Charterers shall have the option to cancel this Charter, however, the vessel to be empty. Hire paid in advance to be immediately refunded by Owners.

31. Charterers not to be held responsible for any damage to the vessel incurred during loading and discharging operations, unless Master advises Charterers or their agents within 24 hours of any damage done to the vessel for which they are liable and also notifies the party(s) doing the damage and endeavours to obtain their admission of liability. Hidden damages to be notified within 48 hours after discovery, but in any case not later than completion of voyage. Copy of correspondence, together with original letter acknowledging liability, if obtained, to be sent to Charterers as soon as possible. Damages affecting vessel's seaworthiness / cargoworthiness / class to be repaired by Charterers at their time / expense prior to redelivery.

32. Owners guarantee that the vessel is always safe in ballast and it is agreed that if any solid ballast is required, all expenses for same including time used for loading and discharging, as well as bunkers consumed during such period, to be for Owners' account.
Vessel is able to sail partly loaded between load ports and, also, discharging ports at Master's discretion. Should any restowing be required, same to be for Charterers' account.

33. Charterers, or their agents, have the option of holding an inspection of the vessel at any time, and Owners/Master to give every facility and assistance in carrying out such inspection.

34. Owners warrant that the vessel is in possession of all certificates of efficiency of working equipment which to comply with the current requirements/regulations at all ports of call.
Owners, furthermore, warrant that this vessel has on board the Federal Maritime Certificate of Financial Responsibility (Oil Pollution) and that the vessel to be tendered free of beetles on delivery Trogodermy Granarium Evert).
In the event that any of the above mentioned certificates does not cover the whole period of this Charter, all costs, losses, etc. resulting from Owners' failure to produce such valid certificate to be for Owners' account and Charterers may suspend hire for the time thereby lost.

30/09 '02 MON 13:14 FAX                    THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=?  Subi: " [Receiving Page 81
26/09 :02  14:40  ☎02086809080          SHEARWATER                    @007/

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

35.   If so required, Charterers shall have the benefit of Owners' P and I Club Association, as far as it's rules permit, and any return insurance premium received by Owners from undewriters as and when received from underwriters by reason of vessel being in port for a minimum of 30 days, provided vessel is on hire, and provided such refund allowed under Owners' policy.

36.   Vessel's holds to be thoroughly cleaned and dried before delivery and must not be painted during charter period without Charterers' permission. Charterers have the option to redeliver the vessel without cleaning, against payment of a lumpsum compensation of U.S. Dollars 4,000, except in case of welded fittings which to be removed in Charterers' time and expense. It is clearly understood this lumpsum payment to include removal of lashing material and/or disposal of dunnage.

37.   Charterers have the liberty to retain sufficient funds from last hire payment in order to cover estimated bunkers remaining on board at the time of redelivery. Settlement of final accounts shall be made upon redelivery except for Owner's expenses which are to be settled upon receipt of vouchers.
Owners have the liberty to use Charterers agents to attend minor matters without charging agency fee, such as crew mail, postage, communication, cash advances, supply of fresh water etc. In case cost is not paid directly from Owners then same to be deducted from hire plus 2.5 pct commission. In case of major matters such as General Average, dry docking, repatriation of crew/hospitalisation, etc then Owners to appoint their own agents. Charterers to co-operate in agency negotiations should Owners elect to use Charterers agents.

38.   In the event hire has not been paid on the due date, Owners are to give Charterers 48 banking hours grace before having the power to exercise their rights hereunder. Owners also to give Charterers 24 hours warning of their intention to exercise such rights.

39.   Hatches to be carefully tended by crew to prevent leakage and Owners to provide sufficient tarpaulins which are to be used if and how deemed necessary for protection of cargo in case hatch covers are not of Mcgregor type. Crew to undertake first opening and last closing of hatches where required by Charterers. If same, however, is not permitted by local regulations/authorities, shore labour to be employed at Charterers' time and expense.

40.   Owners guarantee that the vessel is not blacklisted by the Arabian countries.

30/09 '02 MON 13:15 FAX                    THENAMARIS

Inc 513198   26-Sep-02 14:40   From:02086809080   P=?   Subt:   (Received Page 8)
       26/09 '02  14:42   ☎02086809080        SHEARWATER                    @903/

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13ᵀᴴ SEPTEMBER 2002

41.   At the time of delivery Vessel to deliver with about 300-400 metric tons IFO at
      USD 170.00 per metric ton and with about 90-110 metric tons MDO at USD
      230.00 per metric ton and to be redelivered by Charterers to Owners with about
      same quantities as on delivery. Prices to be the same as on delivery. Charterer
      will have the right to bunker the Vessel for their own account prior Vessel's
      delivery at the last discharge port provided this operation does not interfere with
      Owners discharging operations. Owners to have the right to bunker the Vessel
      prior Vessel's redelivery provided they inform Charterers timely of their
      intentions and to coordinate with Charterers in case a joint bunkering operation
      should be taken up (possibly to use a common supplier and payment of such
      bunkers will be arranged as per invoiced prices).
      Bunker value to be paid along with 1 st hire payment.

42.   The Master to sign Bills of Lading for all cargoes carried under this Charter Party
      if required by Charterers, without prejudice to the terms and conditions of the
      Charter Party in conformity with mate's receipts. Charterers and/or their agents
      are hereby authorised to sign Bills of Lading on Owners'/Master's behalf
      provided same in conformity with mate's receipts.
      All Bills of Lading shall be without prejudice to this Charter and the Charterers
      shall indemnify the Owners against all consequences or liabilities which may
      arise from any inconsistency between this Charter and any Bills of Lading or
      Waybills signed by the Charterers or their agents or by the Captain at their
      request.

43.   On/off hire surveys to be held at first load and discharge ports. Each party shall
      appoint surveyors for their respective account, who shall conduct a joint on/off
      hire survey. A single report shall be prepared and signed by each surveyor
      without prejudice to his right to file a separate report setting forth items upon
      which the surveyors cannot agree. If either party fails to have a representative
      attending survey and signing joint survey report, such party shall nevertheless
      be bound for all purposes by the findings in any report prepared by the other
      party. On-hire survey in Owners' time and off-hire survey in Charterers' time.
      Master will attend on Owners' behalf for on/off-hire survey.

44.   Any time lost, either in port or at sea, deviation from the course of the voyage or
      putting back whilst on voyage caused by sickness of, or accident to, the crew, or
      any person on board the vessel other than persons travelling upon request of
      the Charterers or by reason of the refusal of the Master or crew to perform their
      duties, or due to accident or breakdown to the vessel and/or equipment, the hire
      shall be suspended from the time of inefficiency in port or at sea, deviation, or
      putting back until the vessel and/or equipment is again efficient in the same or
      equivalent position which ever is the shorter distance to the port where the
      vessel is original destined and the voyage resumed therefrom. All direct and
      unavoidable expenses incurred, including bunkers consumed during such period
      of suspension, shall be for Owners' account. In the event of loss of time arising

30/09 '02 MON 13:15 FAX                THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=7  Subi: ~ [Receiving Page 10]
    26/09 '02  14:43  ☎02086809080        SHEARWATER                        @009/1

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

from boycott of the vessel by shore labours and/or tugboats etc., by reason of the terms and conditions on which crew members are employed by this, or any other vessel under the same ownership and/or operation and/or control, payment of hire shall cease for the time thereby lost. Extra expenses directly resulting from such action to be for Owners' account.

45.    Charterers have the option to carry cargo on deck at their risk and expense and Bills of Lading to be claused accordingly, but always within vessel's stability and to Master's satisfaction which not to be unreasonably witheld. Charterers to provide and pay for all lashing and stowing material and/or fitting required.

46.    Charterers have the privilege to fly their own house flag, and also to paint funnel in their colours, in which case painting and repainting to be done in Charterers' time and at their expense.

47.    Both parties have the option to cancel this Charter Party if war breaks out between any two or more of the following countries:

        Germany, U.S.A., United Kingdom, C.I.S.,
        China, or the country where the vessel is registered respectively controlled.

48.    Owners warrant that this vessel has not called at Cuba whilst under their Ownership.

49.    Trading Limits:
        Angola incl Cabinda, Sierra Leone, Finland, Norway, Sweden, Denmark, (but bunkering off Denmark / Sweden allowed), TOC, Lebanon, Libya, Iraq, Israel, Eritrea, North Korea, New Zealand, Australia, Somalia, Zaire, CIS Pacific, Sri Lanka, Cuba, Iceland, war and war like areas as defined by London Underwriters and where a premium becomes due at time of fixture.
        Any extra insurance due to vessels trade to be for Charterers account, but not to exceed Lloyds of London.
        'Conwartime 1993' to be incorporated into this Charter Party.

50.    Cargo exclusions:
        alumina, asbestos, acids, bauxite, colas, concentrates, oily pieces, urea ammonium nitrate, ammunitions, arms, asbestos, acids, black powder, creosoted goods, china clay, cement in bulk/clinkers, calcium carbide, cotton in bales, copra, charcoal, calcium hypochloride, DRI pellets, dangerous cargoes, dynamite, explosives, fishmeal, ferrosilicon, fluorspar, hot briquetted iron, inflammables, logs, livestock, manioc, motor spirit, MTBT, naptha, nuclear and/or radioactive materials including their wastes, oil cakes, oil seeds, pitch in bulk, petcoke, petroleum and its products, pyrites, sunflower seeds expellers, salt, sulphur, scrap of any type, soda ash in bulk, sponge iron, TNT, tar, toxic

SHEARWATER SHIPPING AND CHARTERING LTD
**Page 4**

30/09 '02 MON 13:16 FAX          THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=7  Sub1: " [Receiving Page 11]
26/09 '02 14:44  ☎02086809080          SHEARWATER                          @010/

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

cargoes, war materials.
Charterers option to load upto 100 mt IMO cargo provided always loaded,
stowed,  carried in accordance with IMO / local regulations.

51.    The terms and conditions of this Charter Party are further subject to the Hague
Rules contained in the International Convention for the Unification of Certain
Rules relating to Bills of Lading, dated Brussels, August 25, 1924, New Jason
Clause, Both to-Blame Collision Clause, Conwartime 1993 and General Clause
Paramount are deemed to be incorporated in this Charter Party.

52.    Description of vessel:

'ATHENS OF THE NORTH' -EX 'AVIOR' -

SINGLE / LOG CARRIER,
DWT 18,801 KT AT 9.32M - TPC 26.5 MT
MALTA FL - CLASS N.K.- BLT 78
GRT/NRT 11,432/6,604 - LOA/BM 147.7 M/22.8 M
GRAIN/BALE 23,380/22,172
4X25 SWL THOMSON DERRS -  MAX OUTREACH 5 MTRS
HO/HA 4/4 - PONTOON HATCHCOVERS
HATCH OPENINGS    NO.1    : 16.45 X 9.12M,
                  NO.2 TO NO.4 : 19.50 X 10.64M
STRENGHTS:  TANK TOP        17   T/M2 IN ALL HOLDS
            WEATHER DECK  2.6 T/M2
            HATCH COVERS  2.2 T/M2,
SUITABLE FOR GRAB DISCHARGE.
ABT 12 K ON ABT 18 MTNS IFO 120 CST PLUS 2.2 MT MDO IN GOOD WEATHER
BEAUFORT 4 AND DOUGLAS SCALE 3
IN PORT IDLE 2.2 MT MDO / 2.5 MTS MDO WHEN VSL'S GEAR WORKING.
GRAIN FITTED,CO2 FITTED, LOGS FITTED, STEEL CARGO BATTENS.
GRAIN BD: 4523.1/6367.6/6372.4/6117
BALE BD : 4295.3/6037.7/6042.7/5796.7
        (ALL CMB INCL COAMINGS)

- ALL DETAILS ABT + WOG

and otherwise described by Owners as per the Baltic Exchange Questionniare

1.GENERAL
  VESSELS NAME:                    ATHENS OF THE NORTH
  VESSELS PREVIOUS NAME(S):        MN AVIOR
  FLAG;                            MALTA
  MONTH/YEAR/WHERE BUILT:          MARCH 1978 JAPAN
  YARD NAME NUMBER                 KOYO DOCYARD, 766

30/09 '02 MON 13:16 FAX                    THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=?  Subj: ~ [Received Page 12]
         26/09 '02  14:44  ☎02086809080          SHEARWATER                    @011/(

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

CLASS REGISTRATION :                    NKK/780817
CLASS OF VESSEL:                        NKK
PORT OF REGISTRY & NUMBER:              MALTA, VALETTA, 6667
OWNERS-FULL STYLE:                      FIRE SHIPPING LTD
MANAGERS -FULL STYLE:                   C/O OIA MARITIME CO SA
                                        6 KOKKINARA STR
                                        145 62 ATHENS, GREECE

2.PARTICULARS OF VESSEL
TYPE OF VESSEL :          BULK / LUMBER CARRIER / SINGLEDECKER
                          HULL TYPE STEEL
STATE FOLLOWING
                  DWT ALL TOLD     DRAFT      TPC

SUMMER                 18,801      9.320      28.00
WINTER                 18,249      9.126
TROPICAL               19,356      9.514

FRESH WATER ALLOWANCE FULLY LOADED

IS VSSL FITTED FOR TRANSIT OF
PANAMA CANAL : YES
SUEZ CANAL : YES
ST LAWRENCE SEAWAY : NO

GT/NT
INTERNATIONAL      11,432 /   6,604
SUEZ               11,926.65 / 10,314.23
PANAMA             12,375.40 / 9,171.08

LENGTH OVERALL  147.70

LENGTH BETWEEN PERPENDICULARS  140.0

EXTREME DEPTH AND DEPTH MOULDED : 22.80 / 12.600

DISTANCE FROM WATERLINE TO TOP HATCH COAMING
A. FULLY LOADED CONDITION
NO 1 : 6.48
NO 2 UPTO NO 4 : 6.38 - 6.17
B FULLY BALLAST CONDITION
NO 1 : 11.80
NO 2 UPTO NO 4 : 11.30 - 10.30

STATE VSSLS DEBALLASTING TIME IN MT/HRS

30/09 '02 MON 13:17 FAX                    THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=7  Sub: " [Receiving Page 14]
       26/09 '02  14:45  ☎02086809080          SHEARWATER              @012/1

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

: 3-4 HOURS

DISTANCE FROM KEEL TO
HATCH TOP
No-1:      14.60
No-2:      14.50
No-3:      14.50
No-4:      14.50

HIGHEST FIXED POINT OF VESSEL: 38.00

STATE CAPACITY OF: BALLAST TANKS:     5270 MT

CONSTANTS EXCLUDING FRESH WATIER:     250 MT

DAILY FRESH WATER CONSUMPTION:      8-10 MT

FRESH WATER CAPACITY         285 MT

CAPACITY/DAILY PRODUCTION OF EVAPORATORS: 12MTS PER DAY

NORMAL FRESH WATER RESERVE          15 MT

VESSEL IS FITTED WITH SHAFT GENERATORS:   NO

STATE VESSELS ONBOARD ELECTRICAL SUPPLY   110 VOLTS

3. CARGO ARRANGMENTS

HOLDS

NUMBER OF HOLDS:                    4

HOLDS CLEAN & FREE OF ANY OBSTRUCTIONS:     YES

GRAIN / BALE CAPACITY INCLUDING HATCHWAYS

|       | GRAIN 23,380.1 MTRS | BALE :22,172.4 M |
|-------|---------------------|------------------|
| NO.1  | 4,523.1             | 4,295.3          |
| NO.2  | 6,367.7             | 6,037.7          |
| No.3  | 6,372.4             | 6,042.7          |

SHEARWATER SHIPPING AND CHARTERING LTD
**Page 7**

30/09 '02 MON 13:17 FAX                    THENAMARIS

Inc.513198   26-Sep-02 14:40   From:02086809080   P=?   Subj:   [Receiving Page 15]
       26/09 '02 14:45   ☎02086809080           SHEARWATER                    ☎013/0

M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

NO.4              6,117,0        5,796.7

IS VESSEL STRENGTHENED FOR
THE CARRIAGE OF HEAVY CARGOES:            NO

TANKTOPS STEEL/SUITABLE FOR GRAB DISCHARGE:  YES

CORRUGATRIONS VERTICAL OR HORIZONTAL?:       VERTICAL

TANKTOP STRENGTH
MAXIMUM PERMISSIBLE WEIGHT
TANKTOP:        17 MT/M2
WEATHER DECK:   2.6 MT/M2
HATCH COVERS:   2,2 MT/M2

ARE HOLDS CO2 FITTED            YES

ARE HOLDS FITTED WITH SMOKE DETECTOR SYSTEM: N/A

IS VESSEL FITTED WITH AUSTRALIAN TYPE
APPROVED HOLD LADDER?:              N/A

HAS VESSEL A LOADMASTER COMPUTER/LOADICATOR
OR OTHER TYPE OF MECHANICAL STOWAGE CALCULATOR: NO

ARE HOLDS HOPPERED AT HOLD SIDE:?        YES

HOLD DIMENSIONS ON TANK TOPS:
NO 1 FORWARD 4.73M  HOLD LENGHT 24.10M  AFT 17.91M
NO 2 FORWARD 17.91M  HOLD LENGTH 25.84M  AFT 19.90M
NO 3 FORWARD 19.90M  HOLD LENGTH 25.84M  AFT 19.90M
NO 4 FORWARD 19.90M  HOLD LENGTH 25.84M  AFT 19.20M

DIMENSIOSN TAKEN AS FLLWS
FORWARD, FROM PORT TO STARBOARD SIDE
HOLD LENGTH FROM FORWARD BULKHEAD TO AFT BULKHEAD
AFT, FROM PORT SIDE TO STARBOARD SIDE

CAN VSSL HOLDS BE DESCRIBED AS BOX SHAPED : NO

IS VSSL EL VENTILATED : NATURAL

HATCHES

SHEARWATER SHIPPING AND CHARTERING LTD
Page 8

30/09 '02 MON 13:17 FAX                    THENAMARIS

Inc.513198   26-Sep-02 14:40   From:02086809080   P=7   Subj:   [Receiving Page 15]
           26/09 '02  14:45   ☏02086809080        SHEARWATER                        014/

M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

A. NUMBER FOR HATCHES: 4

B. MAKE AND TYPE OF HATCH COVERS : STEEL PONTOONS

C. HATCH SIZES:
LENGTH / BREADTH
NO 1 : 15.45 X 9.12M
NO 2-4 :19.50 X 10.64

D. STRENGTH OF HATCH COVERS
MAXIMUM PERMISSIBLE WEIGHT FOR HOMOGENOUS
CARGO: 2.2MT / M2

E. DISTANCE FROM SHIPS RAIL TO EDGE OF HATCH COVERS/COAMING EACH
SIDE :
NO 1:        3.80MT FWD - 6.00 MTS AFT
NO 2 UPTO NO 4 : 5.60M

F. DISTANCE FROM BOW TO FORE OF 1 ST HOLD OPENING : 16M

G. DISTANCE FROM STERN TO AFT OF LAST HOLD OPENING: 32M

H. IS VSSL FITTED WITH CEMENT HOLES : NO

I. HEIGHT OF STANCHION PER HATCH
NO 1 - 4.40M
NO 2 - 5.0 M
NO 3 - 5.0M
NO 4 - 5.0M

SPEED / CONSUMPTION / FUEL ENGINE AS PER C/P : 12 KTS / 18 MTS / IFO

BUNKER GRADE IFO : 120 CST

PERMANENT USUABLE BUNKER CAPACITIES : 900 MT IFO / 150 MT MDO

PORT CONSUMPTION PER 24 HOUR AS PER T/C
2.2 MTS MDO WHEN IDLE
2.5 MTS MDO WHEN GEAR WORKING

ENGINE MAKE AND TYPE : IHI PIELSTIC 12 PC2 5V 1 SET

MAX OUTPUT BHP / RPM : 7,800 BHP X 520 RPM

FULL STYLE AND ADDRESS OF OWNERS BANK FOR

30/09 '02 MON 13:18 FAX                    THENAMARIS

Inc. 513198  26-Sep-02 14:40  From:02086809080  P=?  Subl: " [Receiving Page 16]
    28/09 '02 16:46  ☎02086809080          SHEARWATER                    ☐015/

## M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002

FREIGHT/ HIRE REMITTANCES : SEE CL 11

5. CLASSIFICATION SOCIETY, SURVEYS, CERTIFICATES
NAME OF CLASIFICATION SOCIETY : NKK

DATE OF LAST SPECIAL SURVEY : 05 / 12 / 2001

DATE OF LAST ANNUAL SURVEY : 05 / 09 / 02 TIL 05 / 03 / 03

IS VESSEL ENTERED IN A CLASSIFICATION APPROVED
ENHANCED SURVEY PROGRAM : YES

DATE OF INSPECTION : 05 / 12 / 2001
DATE OF NEXT INSPECTION : 05 / 12 / 02 =/- 3 MONTHS
DATE AND LAST PLACE OF LAST DRYDOCK: 05 / 12 / 01 GUANZHU CHINA

HAS VESSEL BEEN INVOLVED IN ANY POLLUTION
INCIDENT IN THE LAST 12 MONTHS : NO

HAS THE VESSEL BEEN INVOLVED IN ANY GROUNDINGS OR SOLLISION IN THE
LAST 12
MONTHS : NO

IS VSSL ISM CERTIFIED : YES
DATE OF LAST AND NEXT AUDIT : LAST 12 / 05 / 00  NEXT 12 / 11 / 02 +/- 6
MONTHS

STATE RECOMMENDATION MADE IF ANY:  N/A

DATE AND PLACE OF LAST PORT STATE CONTROL : KLAIPEDA 10 / 06 / 02

VESSL PASSED PORT STATE CONTROL INSPECTION WITHOUT DETENTION OR
RECOMMENDATIONS
: YES

IS VESSEL CREW GOVERENED BY FULL ITF OR BONE FIDE TRADE UNION
AGREEMENT
ACCEPTABLE TO ITF : ILO

CERTIFICATES
CERTIFICATED NAME          DUE
SPECIAL SURVEY        05 / 12 / 2006
LOADLINE             05 / 12 / 2006
SAFETY EQUIPMENT     05 / 12 / 2006
SAFETY RADIO         05 / 12 / 2006

30/09 '02 MON 13:18 FAX                THENAMARIS

Inc.513198  26-Sep-02 14:40  From:02086809080  P=?  Subj: Receiving Page 171
    26/09 '02 14:46  ☎02086809080.    SHEARWATER                    ☎010/

**M/V "ATHENS OF THE NORTH" - C/P DATED LONDON 13TH SEPTEMBER 2002**

CARGO GEAR          07 / 04 / 2003

DO ANY RECOMMENDATION APPEAR ON ANY
OF THE ABOVE STATED CERTITICATES:  N/A

IMO REGISTRATION NO.  7701158
EXPIRY DATE OF PMY CERTIFICATE : PLSE CLARIFY

6. COMMUNICATION
CALL SIGN : 9HL16
NAME OF RADIO STATION WHICH VESSEL CURRENTLY
MONITORING
INMARSAT A PHONE NUMBER : N/A
INMARSAT A FAX NUMBER:   N/A
INMARSAT A TELEX NUMBER : N/A
INMARSAT C TELEX NUMBER : 424861701-11#

7. INSURANCE
HULL AND MACHINERY INSURED VALUE :
GRUPPO CAMBIASO RISSO 80 PCT : USD 3,200,000
HELLENIC MUTUAL     20 PCT : USD 2,500,000

NAME OF OWNERS P AND I CLUB : UK P AND I CLUB

8. CREW
NUMBER OF CREW : 24 PERSONS INCL MASTER

NAME AND NATIONALITY OF MASTER:

NATIONALITY OF OFFICERS : 4 OFFICERS PHILIPINO + 3 OFFICERS UKRANIAN +
1
OFFICER GREEK

NATIONALITY OF CREW : 11 PHILIPINOS + 3 RUSSIANS

9.MISCELLANEOUS
IS VESSEL FITTED FOR THE CARRIAGE OF GRAIN IN
ACCORDANCE WITH CHARTER IV OF SOLAS 1974 AND
AMENDMENTS  WITHOUT  BAGGING  STRAPPING  AND  SECURING  WHEN
LOADING A FULL CARGO
(DTW) OF HEAVY GRAIN IN BULK (STOWAGE
FACTOR 42 CBFT) WITH ENDS:   YES

STATE NUMBER OF HOLDS WHICH MAY BE LEFT SLACK
WITHOUT REQUIRING BAGGING, STRAPPING AND SECURING:

# M/V ATHENS OF THE NORTH
### VALLETTA – MALTA

PORT OF LAGOS
NIGERIA
20TH OCTOBER 2002


RE: DAMAGE TO DERRICK NO. 4


WE ARRIVED AT LAGOS, NIGERIA ON 18.10.02 AT 0800H LT/ 0700H GMT IN
ORDER TO DISCHARGE BALANCE CARGO OF 12,983.05 MT STEEL PRODUCTS.
VESSEL WAS BERTHED AT TIN CAN ISLAND, SAME DAY STEVEDORE BOARDED AT
1400 HRS.

PRIOR TO THE COMMENCEMENT OF THE CARGO OPERATIONS, STEVEDORES
FOREMAN AND WINCH OPERATORS HAVE BEEN BRIEF AND PROVIDED WITH
DETAILED INSTRUCTIONS BY THE CH OFFICER MR. S. KRYZHANOVSKYY
TOGETHER WITH DECK OFFICER AND DECK CREW ON DUTY ENGAGED WITH THE
LOADING/DISCHARGING OPERATIONS, REGARDING THE VESSEL'S CARGO GEAR.

IN ADDITION TO THE VERBAL BRIEFING, A DEMONSTRATION OF THE SAFE
WORKING OPERATION WAS ALSO ARRANGED HAVING SATISFIED ALL FOREMAN'S
AND STEVEDORES QUERIES. DISCHARGING OPERATIONS COMMENCED AT 1455 -
HRS.

WHILE THE DISCHARGING OPERATIONS WERE IN PROGRESS, IT WAS NOTED
THAT AGENTS OR RECEIVERS HAD NOT MADE ALL THE NECESSARY ASHORE
HANDLING GEAR ARRANGEMENT AND THE VESSEL'S GEAR WAS NOT OPERATED AT
OPTIMUM RATE OF DISCHARGE. RELEVANT REMARKS WAS INSERTED TO THE
S.O.F.

IT WAS ALSO REPORTED THAT OFFICERS ON DUTY, NUMEROUS TIMES HAVE
VERBALLY REQUESTED THE FOREMAN, WINCHES OPERATORS AND STEVEDORES TO
BE MORE CAREFUL WITH THE OPERATION OF CARGO GEAR AS WELL AS WITH
THEIR ASSIGNED DUTY, TO DISCHARGE THE CARGO.

FOR STEVEDORES FAILURE TO PERFORM, THEIR DUTIES IN A PROFESSIONALLY
MANNER AND IN ORDER TO PROTECT VESSEL AND OWNERS FOR DAMAGES
CAUSED, LETTERS OF PROTEST WERE ISSUED, COPIES OF WHICH ATTACHED.

ON 20.10.02 AT 0520 HRS, STEVEDORES CAUSED AN EXTENSIVE DAMAGE TO
DERRICK NO.4 AND THE OWNERS P&I CLUB WAS PROMPTLY NOTIFIED.
ATTENDING SURVEYOR ARRANGED FOR THE FURTHER HANDLING AND
NOTIFICATIONS TO PARTIES CONCERNED AS NECESSARY, FOR KEEPING OWNERS
RIGHTS RESERVED.

CAPT. JOSE T. SILERIA
----------------------
MASTER/MV ATHENS OF THE NORTH

**EXHIBIT**

"B"

ATHENS OF THE NORTH
VALLETTA

20TH OCTOBER 2002
PORT OF LAGOS
NIGERIA

TO: GMT/MEGABOND STEVEDORING CO. - LAGOS
    LAGOS, NIGERIA
TO: GMT SHIPPING NIGERIA LTD - LAGOS
    AS CHARTERERS AGENT
TO: GMT SHIPPING AGENCY - BREMEN
    AS VESSEL CHARTERERS
TO: OIA MARITIME - ATHENS
    AS VESSEL OPERATOR

RE: LETTER OF PROTEST

SIRS,

PLEASE BE INFORMED THAT ON ABOUT 0520H LOCAL TIME OF 20TH OCTOBER,
THE DERRICK NO. 4 WAS FALLED DOWN AND BENDED ON THE AFTERPART OF
LENGTH DUE TO ROUGHED, MISHANDLING OPERATION AND NEGLIGENCE BY THE
STEVEDORES WINCHMAN, INSPITE OF REPEATEDLY ADVISES BY THE CH.
OFFICER AND ALL DUTY OFFICER TO OPERATE THE CARGO GEARS PROPERLY,
TO THE STEVEDORES FOREMAN AND WINCHMAN, AS HAD FOUND SOME WINCH
MAN ON DUTY NIGHT SHIFT UNDER THE INFLUENCE OF LIQOUR, SMELL OF
ALCOHOL.

PLEASE ADVISE WHAT ARE THE INTENTIONS OF THE STEVEDORING CO. AND
OTHERS PARTIES CONCERN, IN ORDER TO CONTINUE TO DISCHARGE THE CARGO
IN HOLD NO.4 AND NOT TO DELAY THE VESSEL SCHEDULE FOR NEXT
EMPLOYMENT. REPAIRS HAVE TO BE EFFECTED AND COMPLETED PRIOR TO
COMPLETION OF DISCHARGE WORKS/ VESSEL REDELIVERY. OWNERS RIGHTS
ARE FULLY RESERVED. WE HAVE REQUESTED THE INTOXICATED WINCHMAN TO
REMAIN ONBOARD UNTIL AN ALCOHOL TEST IS CARRIED OUT IN THE PRESENCE
OF P+I APPOINTED SURVEYOR. CHARTERERS ARE KINDLY REQUESTED TO FULLY
ASSIST WITH THE ABOVE REQUEST AND TO FORWARD THE APPROPRIATE
INSTRUCTIONS WITH COPY TO US.

FOR THIS MATTERS, THT THE VESSEL AND HERS OWNERS, STRONGLY PROTEST,
AND HOLDING YOU THE RESPONSIBLE FOR THE DAMAGES INCURRED OF THE
SAID SHIP'S DERRICK AND OF ANY DELAY OF CARGO DISCHARGING
OPERATIONS DUE TO ABOVE AND FOR ANY FURTHER DAMAGES AND DELAY
OCCURED.

RESPECTFULLY YOURS

CAPT JOSEF T. SILERA
-------------------------
MV ATHENS OF THE NORTH

MV ATHENS OF THE NORTH
VALLETTA

20TH OCTOBER 2002
PORT OF LAGOS
NIGERIA

RE: WITNESS REPORT

SIRS,

PLEASE BE INFORMED I, MR. DEMETRIO V. CULANAG A 2ND MATE, AN
OFFICER ON DUTY THAT THE INCIDENT OCCURED TO VESSEL DERRICK NO.4
WHICH CAUSED FALLED DOWN AND BENDED ON THE AFTERPART OF THE LENGTH,

WAS ON ABOUT 0520H LOCAL TIME OF 20TH OCTOBER, DUE TO ROUGHED,
MISHANDLING OPERATIONS AND NEGLIGENCE BY OPERATING BY WINCHMAN WITH
FROM ZERO SPEED TO MAXIMUM SPEED AND SUDDEN STOPPED EVEN IN LIFTING
AND LOWERING OF THE CARGO WHERE WERE CAUSED GAVE OF FULL PRESSURE
OF EQUIPTMENT, INSPITE OF REPEATEDLY GIVEN ADVISES THE STEVEDORES
WINCHMAN, TO OPERATE THE GEARS PROPERLY.

THAT, IMMEDIATELY INFORMED THE MASTER AND CH. OFFICER REGARDING
THE INCIDENT WHICH ARE THE MASTER AND CH.OFFICER PROCCED
IMMEDIATELY ON THE SCENE.

AT THE TIME OF THE INCIDENT CARGO GEAR WAS IN VERY GOOD CONDITION.

FOR THIS MATTERS, THT THE VESSEL AND HERS OWNERS, STRONGLY PROTEST,
AND HOLDING YOU THE RESPONSIBLE FOR THE DAMAGES INCURRED OF THE
SAID SHIP'S DERRICK AND OF ANY DELAY OF CARGO DISCHARGING
OPERATIONS DUE TO ABOVE AND FOR ANY FURTHER DAMAGES, LOSSES AND
DELAY OCCURED.


RESPECTFULLY YOURS

MR. DEMETRIO V CULANAG
--------------------
2ND OFF/ MV ATHENS OF THE NORTH


MR. SERGIY V.KRYZHANOVSKYY
--------------------------
CH. OFFICER


CAPT.
--------------------
MASTER/MV ATHENS OF THE NORTH

COPY RECEIVED BY. Attomp
OF A M S P + 1
20/10/2002

Copy received by
Mr. Tany Iluoma 20/10/02
SGS Nigeria